UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/18/2019

GREGORY KUCZINSKI,

                 Plaintiff,

     - against -

CITY OF NEW YORK et al.,

                 Defendants.

17cv7741 (JGK)

OPINION & ORDER

**JOHN G. KOELTL, District Judge:**

The plaintiff, Gregory Kuczinski, former Deputy Commissioner of the Investigations Division of the New York City Department of Correction ("DOC"), brings this action against the City of New York, Commissioner of the New York City Department of Investigation ("DOI") Mark Peters, former DOI Inspector General Jennifer Sculco, DOI Assistant Commissioner Paul Cronin, and DOI Deputy Commissioner Michael Carrol in their individual and official capacities (collectively, the "defendants"). The plaintiff alleges violation of his right to free speech under the United States and New York State Constitutions, violation of his rights under the Fourteenth Amendment to the United States Constitution, and state law defamation.

The defendants move to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons explained below, the defendants' motion is **granted in part and denied in part.**

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While courts should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.

A court may also consider documents incorporated by reference in the complaint as well as documents the plaintiff either had in the plaintiff's possession or had knowledge of and

upon which the plaintiff relied in bringing suit.  See Cortec

Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir.

1991).

## II.

The following facts are taken from the Second Amended

Complaint and the documents referenced therein, and are accepted

as true for purposes of this motion to dismiss.

In March 2015, the plaintiff was hired as Assistant

Commissioner of the Investigations Division of the New York City

DOC.  (Second Am. Compl. ("SAC") ¶ 13.)  In April 2016, he was

promoted to Deputy Commissioner of that Division.  (Id. ¶ 15.)

In September or October 2016, the New York City DOI asked

the plaintiff to release ten DOC personnel for assignment to the

DOI.  (Id. ¶ 16.)  The plaintiff refused.  (Id. ¶ 17.)

On January 23, 2017, the plaintiff assumed responsibility

for the DOC Intelligence Bureau.  (Id. ¶¶ 19-21.)  The

Intelligence Bureau is a division of the DOC that, among other

things, gathers intelligence in order to prevent contraband from

coming into New York City detention facilities and re-arrests

inmates for crimes committed while in custody.  (Id. ¶ 20.)

On February 25, 2017, the plaintiff was put in charge of

the Analytical Intelligence Division.[1]  (Id. ¶ 24.)  This

---

[1]    The defendants assert that the Analytical Intelligence Division is
actually called the Intelligence and Analytics Unit.  (Defs.' Mem. at 4.)

division was formed to investigate prisoner malfeasance by
monitoring prisoners' telephone calls and social media websites.
(Id. ¶ 27.)  The Analytical Intelligence Division was formed on
January 9, 2017, about a month and a half before the plaintiff
took command.  (Id. ¶ 25.)

Under the DOC's rules and regulations, the Analytical
Intelligence Division was prohibited from listening to certain
inmate calls, including when the inmate was speaking to the
inmate's attorney, physician, or clergy member.  (Id. ¶ 30.)
The defendants claim that the Analytical Intelligence Division
was prohibited by Mayor's Executive Order 16 from listening to
calls between inmates and DOI investigators.  (Defs.' Mem. at 5-
6).  The plaintiff asserts that monitoring calls between inmates
and DOI investigators was permissible.  (SAC ¶ 52.)

On March 9, 2017, members of the DOI learned that the
Analytical Intelligence Division had been listening to telephone
calls between an inmate and a DOI investigator and that
Analytical Intelligence Division personnel had continued
listening to the calls even after learning of the connection to
an investigation by the DOI.  (Defs.' Ex. A, at 3.)  The
plaintiff claims that the Analytical Intelligence Division was
not under his control at the time these calls were placed and
monitored.  (SAC ¶ 26.)

The calls in question took place between January 9, 2017, and February 7, 2017. (Id. ¶ 40.) During that time, the Analytical Intelligence Division was managed by Executive Agency Counsel Douglas Ziegler and Assistant Commissioner Keith Taylor. (Id. ¶ 26.) On February 7, 2017, Mr. Ziegler informed the Commissioner of the DOC -- referred to only as "DOC Commissioner Ponte" in the Second Amended Complaint -- that there had been some "suspicious" inmate phone calls. (Id. ¶ 41.) The plaintiff claims that Commissioner Ponte then asked the plaintiff to review and "vet" the suspicious phone calls. (Id. ¶ 42.)

Thereafter, the plaintiff went to a trailer on Rikers Island where Analytical Intelligence Division personnel conducted operations. (Id. ¶ 60.) The plaintiff was briefed by unnamed Analytical Intelligence Division officers on the suspicious phone calls. (Id. ¶ 61.) The Analytical Intelligence Division personnel told the plaintiff that the calls were "secured," saved to disks, and that the conversations were "problematic." (Id. ¶¶ 62-63.) The plaintiff alleges that he then "reinstructed" the Analytical Intelligence Division personnel to secure the disk that held the telephone conversations, and that he subsequently asked other investigators from the Investigation Division to listen to the calls. (Id. ¶¶ 64-65.) The plaintiff claims he did this to

determine whether the calls were "highly suspicious." (Id. ¶ 65.) On March 10 or 14, 2017, one Investigation Division investigator reported that the calls were "questionable but overall not problematic," and another investigator said that "there was nothing there." (Id. ¶ 66.)

On March 8, 2017, the DOI notified the plaintiff of a pending investigation concerning the improper personal use of City vehicles by the DOC. (Id. ¶ 36.) This was not the first time questions were raised about the plaintiff's personal use of City vehicles. The plaintiff had previously been interviewed in late 2016 by defendant Sculco, the Inspector General of the DOI, concerning the DOC policy regarding the personal use of City vehicles. (Id. ¶¶ 37-38.) On March 13, 2017, the DOI again questioned the plaintiff about personal use of City vehicles. (Id. ¶ 70.)

On March 16, 2017, pursuant to an investigation into the phone calls that the Analytical Intelligence Division recorded between prisoners and DOI agents, the DOI raided the Analytical Intelligence Division trailer on Rikers Island and confiscated computers, cell phones, and investigative files. (Id. ¶ 67.) The DOI interviewed the plaintiff about the phone monitoring the next day. (Id. ¶ 71.) At that interview, defendants Sculco, Carroll, and Cronin asserted that the plaintiff violated Mayor's Executive Order 16 and the City Charter, and that the plaintiff

violated, obstructed, and interfered with a DOI investigation. (Id. ¶¶ 74-76.)

The plaintiff claims that within a week or two of that meeting he went to the Bronx County District Attorney's Office, Public Integrity Unit, and informed them of the monitored telephone calls and his discussions regarding personal use of City vehicles, among other things.[2] (Id. ¶ 87.) The plaintiff also alleges that he, along with Commissioner Ponte, Brenda Cook, and Director Antonio Cruz, met with New York City Corporation Counsel Zachary Carter regarding DOI's accusation that the plaintiff and DOC violated Mayor's Executive Order 16 and the City Charter. (Id. ¶ 88.)

A few weeks later, on May 5, 2017, defendant Mark Peters, the Commissioner of the New York City DOI, sent a letter to the Mayor (the "Peters Letter"), which stated the findings of the investigation "into multiple violations of Mayor's Executive Order 16 . . . by members of the New York City [DOC]." (Defs.' Ex. A.) That letter stated:

> DOI has determined that on multiple dates between January 2017 and March 2017, members of DOC staff inappropriately monitored telephone calls between a DOI

---

[2] In the Second Amended Complaint, the plaintiff asserts in paragraph 87 that he went to the Bronx County District Attorney's Office, Public Integrity Unit, and informed them of "all the facts as alleged above" -- that is, in paragraphs 1 through 86 of the Second Amended Complaint. (SAC ¶ 87.) This includes his allegations that: the investigation into the plaintiff was designed to cover up DOI incompetence, (id. ¶ 82), the DOI was misusing public funds, (id. ¶ 84), certain officials were using their public office for personal vendettas, (id. ¶ 86), and he refused to release ten DOC personnel for assignment to the DOI, (id. ¶¶ 16-17).

investigator and a DOC inmate that was cooperating with
a DOI investigation.  This monitoring violated [Mayor's
Executive Order] 16, the New York City Charter, and the
Rules of the City of New York, potentially compromised
an ongoing criminal investigation, and jeopardized the
safety of DOI investigators and inmate cooperators.

(Id.)[3]  The letter also recommended that the plaintiff's

employment be terminated based on his failure to demonstrate

sound judgment for his role in the telephone monitoring.  (Id.;

SAC ¶ 91.)  Within a week of the Peters Letter being sent, the

plaintiff was terminated from his position as Deputy

Commissioner of the Investigations Division of DOC.  (SAC

¶¶ 103, 108.)

The plaintiff alleges that on May 8, 2017, he was shown a

"different version" of the Peters Letter from the one that was

sent to the Mayor.  (Id. ¶ 104.)  The plaintiff alleges that the

version he was shown was "a different version with more false

allegations, misrepresentations and inconsistences in fact and

---

[3]     The defendants include two exhibits with their motion to dismiss:  the
Peters Letter, (Defs.' Ex. A), and Mayor's Executive Order 16 and amendments
to that Executive Order, (Defs.' Ex. B).  The plaintiff specifically refers
to the Peters Letter and the Mayor's Executive Order in the Second Amended
Complaint.  (SAC ¶¶ 45-51, 91-103.)  Therefore, the Court considers both the
letter and the Executive Order on this motion to dismiss.

        The plaintiff includes affidavits and exhibits with his opposition
papers.  The plaintiff includes three affidavits (Maria Aff.; Pl.'s Exs. 14-
15), exhibits reflecting correspondence between counsel in this case, (Pl.'s
Exs. 1-3), the Peters Letter and a Memorandum of Understanding between the
DOI and the DOC, (Pl.'s Ex. 4), and nine exhibits of news articles, (Pl.'s
Exs. 5-13).  The Peters Letter and Memorandum of Understanding are
incorporated by reference in the Complaint.  Both parties assert that the
news articles may be considered.  However, the affidavits and exhibits
reflecting correspondence between counsel are plainly improper at this stage
of the proceedings and will not be considered.

law."  (Id.)  The plaintiff asserts that this version of the letter was distributed to various newspapers in New York City and certain other public media.  (Id. ¶ 105.)

The plaintiff brings claims for retaliation in response to his exercise of his right to free speech, deprivation of a liberty interest without due process, and defamation.

### III.

The defendants argue that the plaintiff's First Amendment retaliation claim must be dismissed because the plaintiff's speech is not protected by the First Amendment.

A violation of the First Amendment to the United States Constitution by state officials is actionable under 42 U.S.C. § 1983.  The analysis for a retaliation claim under the First Amendment and under Article I § 8 of the New York State Constitution is the same.[4]  Brinn v. Syosset Pub. Library, 61 F. Supp. 3d 247, 255 n.3 (E.D.N.Y. 2014), aff'd, 624 F. App'x 47 (2d Cir. 2015) (summary order).  A plaintiff asserting violation of these provisions must allege that the plaintiff (1) has engaged in protected First Amendment activity, (2) suffered an

---

[4]      In Count I of the Second Amended Complaint, the plaintiff does not specifically allege that he is bringing a claim under the First Amendment or Article I § 8 of the New York State Constitution.  (SAC ¶¶ 106-21.)  However, the plaintiff claims that he "spoke of matters of public concern and safety," (id. ¶ 107), and that he was "terminated from his employment with DOC because of his speech," (id. ¶ 108).  Therefore, the Court construes this claim as arising under the First Amendment of the United States Constitution and brought under 42 U.S.C. § 1983, and as arising also under Article I § 8 of the New York State Constitution.

9

adverse action, and (3) there was a causal connection between the protected activity and the adverse action. Lee-Walker v. N.Y.C. Dep't of Educ., 220 F. Supp. 3d 484, 490 (S.D.N.Y. 2016), aff'd, 712 F. App'x 43 (2d Cir. 2017) (summary order). The defendants do not dispute that the plaintiff suffered an adverse action or that the plaintiff's speech was the cause of that adverse action. Therefore, the only issue is whether the plaintiff's speech was protected.

The Supreme Court in Garcetti v. Ceballos clarified that in order to bring a claim for violation of the First Amendment a public employee must first establish that the employee spoke "as a citizen" on "a matter of public concern." 547 U.S. 410, 419 (2006). If not, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." Id. at 418.

When a public employee airs a complaint or concern pursuant to a clear duty to report imposed by law or employer policy, the employee is speaking as an employee and not as a citizen. Id. at 419-21. In such cases, the First Amendment does not protect the employee's speech from discipline or retaliation by the employer. Id. However, if the employee goes outside of the established institutional channels in order to express a complaint or concern, the employee is speaking as a citizen and the speech is protected by the First Amendment. See

id.; see also Weintraub v. Bd. of Educ. of City Sch. Dist. of
N.Y.C., 593 F.3d 196, 198 (2d Cir. 2010). The determination of
whether speech was made pursuant to an official duty is "a
practical one," Garcetti, 547 U.S. at 424, and requires
consideration of various facts that may not be before the court
at the motion to dismiss stage, see, e.g., Denicolo v. Bd. of
Educ. of City of New York, 328 F. Supp. 3d 204, 215 (S.D.N.Y.
2018); Kelly v. Huntington Union Free Sch. Dist., 675 F. Supp.
2d 283, 293-94 (E.D.N.Y. 2009). It is not dispositive that a
plaintiff's speech is related to his job. See Garcetti, 547
U.S. at 421 ("[That t]he [speech] concern[s] the subject matter
of [the plaintiff's] employment . . . is nondispositive. The
First Amendment protects some expressions related to the
speaker's job.").

The plaintiff does not clearly delineate what speech is the
basis of his retaliation claim. The defendants proffer six
potential acts of speech that might be the basis for the
plaintiff's claim:

- the plaintiff's rejection of DOI's request for the
  release and assignment to DOI of ten additional staff
  members in September or October 2016, (SAC ¶ 17);

- a telephone conversation between defendant Sculco and
  the plaintiff in late 2016 concerning the DOC policy
  on the personal use of City vehicles, wherein:

  o the plaintiff stated that he believed it was
    expected that he would be allowed to use the

11

department vehicle "24/7" so that if he was
called in there would be no delay, (id. ¶ 37);

o the plaintiff told defendant Sculco to discuss
his and others' use of the vehicles with the
Deputy Commissioner of the DOC, (id. ¶ 39);

- the March 13, 2017, DOI interview where the plaintiff
was questioned about personal use of City vehicles,
(id. ¶ 70);

- the March 17, 2017, DOI interview where the plaintiff
was questioned regarding inmate phone monitoring, (id.
¶ 71);

- the conversation the plaintiff had with the Bronx
County District Attorney's Office during the week of
March 20 or 27, 2017, (id. ¶ 87).

The defendants argue that none of these instances of speech
can survive a motion to dismiss because each instance of speech
was made "not as a citizen, but as part-and-parcel of [the
plaintiff's] duties as Deputy Commissioner of Investigations for
DOC." (Defs.' Mem. at 12-13.) In his opposition papers, the
plaintiff does not address the first five instances of speech
offered by the defendants; rather, the plaintiff responds only
that his conversation with the Bronx County District Attorney's
Office in March 2017 was made "as a citizen."

The plaintiff has sufficiently pleaded that his speech to
the Bronx County District Attorney's Office Public Integrity
Unit was made "as a citizen." The defendants concede that a
civilian analogue exists for these statements. Indeed, it is
clear that ordinary citizens may raise public integrity claims

12

with the district attorney, and there is no suggestion that the plaintiff was under a duty to report to the district attorney. See Hughes v. Town of Bethlehem, No. 10cv1489, 2013 WL 1336341, at *1 (N.D.N.Y. Mar. 29, 2013) (holding that a police officer's complaints to the Public Integrity Unit of the Albany County District Attorney's Office about another detective's alcoholism and decisions while on duty were protected speech); Gusler v. City of Long Beach, 823 F. Supp. 2d 98, 120-21, 127-28 (E.D.N.Y. 2011) (finding the plaintiff firefighter's statements to the Nassau County District Attorney's Office regarding threatening internet posts were protected speech because they were made as a citizen on a matter of public concern).

The plaintiff also plausibly alleges that his speech to the Bronx County District Attorney's Office involved matters of public concern. The plaintiff alleges that he "went to the Bronx County District Attorney's Office, Public Integrity Unit, and informed them of all the facts as alleged [in paragraphs 1-86 of the Second Amended Complaint]" -- which includes his allegations that the investigation into the plaintiff was designed to cover up DOI incompetence, that the DOI was misusing public funds, and that certain officials were using their public office for personal vendettas. See Laface v. E. Suffolk Boces, No. 18cv1314, 2018 WL 6002395, at *14 (E.D.N.Y. Nov. 15, 2018) (stating that "potential public corruption or misconduct" claims

such as misuse of public funds "are almost always considered by the courts as a matter of public concern"); Munafo v. Metro. Transp. Auth., No. 00cv134, 2003 WL 21799913, at *9 (E.D.N.Y. Jan. 22, 2003) ("[C]harges of public corruption or illegal misuse of government funds may rise to the level of public concern even if embedded within an otherwise non-public employment dispute.").

Therefore, the plaintiff has sufficiently alleged that his speech to the Bronx County District Attorney's Office was made as a citizen on a matter of public concern.[5]  The defendants' motion to dismiss the First Amendment retaliation claim is **denied.**

## IV.

The plaintiff alleges, pursuant to 42 U.S.C. § 1983, that the defendants deprived him of a liberty interest without due process.  The plaintiff asserts that the defendants harmed his reputation by distributing false allegations about him to various news outlets.

The plaintiff's claim is one for loss of reputation.  The loss of one's reputation can violate the Due Process Clause if the loss of reputation is associated with the deprivation of a

---

[5]     Although the plaintiff does not appear to allege that the defendants knew that the plaintiff spoke to the Bronx County District Attorney's Office, the defendants do not assert that they were unaware of this conversation and did not raise causation as a basis for dismissal.

federally protected liberty interest, such as government employment. Bd. of Regents v. Roth, 408 U.S. 564, 573 (1972); Valmonte v. Bane, 18 F.3d 992, 999 (2d Cir. 1994). The loss of reputation without due process of law, in combination with the loss of a more tangible interest, is referred to as a "stigma plus" claim. The "stigma" within a stigma plus claim is the loss of reputation and the "plus" is the loss of a more tangible interest, such as employment. See Velez v. Levy, 401 F.3d 75, 87-88 (2d Cir. 2005); Spang v. Katonah-Lewisboro Union Free Sch. Dist., 626 F. Supp. 2d 389, 394-95 (S.D.N.Y. 2009). "Because stigma plus is a species within the phylum of procedural due process claims," the plaintiff must demonstrate that his liberty interest was deprived without due process of law in addition to proving the deprivation of a liberty interest. Segal v. City of New York, 459 F.3d 207, 213 (2d Cir. 2006).

"[T]he availability of adequate process defeats a stigma plus claim." Id. This is often done through a name-clearing hearing. "[T]he hearing required where a nontenured employee has been stigmatized in the course of a decision to terminate his employment is solely to provide the person an opportunity to clear his name." Codd v. Velger, 429 U.S. 624, 627 (1997) (per curiam) (quotation marks omitted); Segal, 459 F.3d at 214 (in cases involving "at-will government employee[s], the availability of an adequate, reasonably prompt, post-termination

15

name-clearing hearing is sufficient to defeat a stigma-plus claim").

In this case, there was an adequate post-termination name-clearing hearing available to the plaintiff through an Article 78 proceeding under the New York Civil Practice Law and Rules ("CPLR"). The availability of and failure to take advantage of an Article 78 proceeding defeats stigma-plus claims made by at-will employees. Anemone v. Metro. Transp. Auth., 629 F.3d 97, 121 (2d Cir. 2011) (affirming dismissal of "stigma-plus" claim where the plaintiff failed to pursue an Article 78 proceeding); Cohen v. Walcott, No. 13cv9181, 2017 WL 2729091, at *4 (S.D.N.Y. June 23, 2017) ("The availability of an Article 78 proceeding defeats a stigma-plus claim where, as here, the plaintiff, an at-will employee, fails to avail himself of the opportunity to be heard at such a hearing."); Giscombe v. N.Y.C. Dep't of Educ., No. 12cv464, 2013 WL 829127, at *8 (S.D.N.Y. Feb. 28, 2013) (stating that the plaintiff failed to state a "stigma-plus" claim where he did not seek an Article 78 name-clearing proceeding or any other available hearing). The plaintiff does not dispute the fact that an Article 78 name-clearing hearing was available to him, nor does he make any effort to distinguish the relevant case law.

Because the plaintiff had the opportunity to avail himself of a name-clearing hearing through an Article 78 proceeding

under the CPLR and did not do so, the stigma-plus claim fails as a matter of law and must be **dismissed**.

**V.**

The plaintiff also alleges a claim for defamation from reputational harm stemming from both the Peters Letter, which was sent to the Mayor, and the "different version" of that letter, that the plaintiff claims was provided to the press. The defendants argue that the Peters Letter is entitled to either an absolute or qualified privilege. As to the "different version" of the letter, the defendants argue that the plaintiff has failed to state a claim for defamation because the plaintiff did not define with specificity what statements in that letter were defamatory.

**A.**

The plaintiff's defamation claim based on the Peters Letter is barred by an absolute[6] or qualified privilege.

Some communications are privileged and, even if they are defamatory, may not be the basis for a defamation action. Boice v. Unisys Corp., 50 F.3d 1145, 1149 (2d Cir. 1995). In this context, courts recognize two types of privileges: absolute and qualified. Id. "The difference between the two is relevant

---

[6] Courts also refer to this as an "absolute immunity." See Murphy v. City of New York, No. 106059/06, 2008 N.Y. Misc. LEXIS 10017, at *17 (Sup. Ct. July 2, 2008).

only when the party asserting the privilege has acted in bad faith.  The holder of a qualified privilege may be sued for defamation if he published the statements with malice."  Id.  On the other hand, "[o]ne who enjoys the absolute privilege . . . may not be sued no matter how malicious his state of mind."  Id.  The type of privilege afforded depends on the "occasion and the position or status of the speaker."  Park Knoll Assocs. v. Schmidt, 451 N.E.2d 182, 184 (N.Y. 1983).

"Absolute privilege is based upon the personal position or status of the speaker and is limited to the speaker's official participation in the processes of government."  Id.  The absolute privilege is given to an official who is "a principal executive of State or local government or is entrusted by law with administrative or executive policy-making responsibilities of considerable dimension."  Firth v. New York, 785 N.Y.S.2d 755, 756 (App. Div. 2004) (quotation marks omitted).  The absolute privilege "extends to those of subordinate rank who exercise delegated powers."  Id. at 757 (quoting Ward Telecom & Computer Servs. v. New York, 366 N.E.2d 840 (1977)).

Qualified privilege in New York covers a "communication made by one person to another upon a subject in which both have an interest."  Liberman v. Gelstein, 605 N.E.2d 344, 345 (N.Y. 1992) (quoting Stillman v. Ford, 238 N.E.2d 304 (N.Y. 1968)).  A plaintiff can defeat the qualified privilege if he shows that

the communication was motivated by malice.  Orenstein v. Figel, 677 F. Supp. 2d 706, 711 (S.D.N.Y. 2009).

DOI reports and reports issued by similar agencies have been held to be subject to an absolute or qualified privilege. Murphy v. City of New York, No. 106059/06, 2008 N.Y. Misc. LEXIS 10017, at *17 (Sup. Ct. July 2, 2008) (holding that DOI reports that are made "in furtherance of [DOI's] executive and statutory mandate are cloaked in absolute immunity from suit sounding in defamation"), aff'd, 874 N.Y.S.2d 407, 407 (App. Div. 2009) (holding that the statements in the DOI report "were protected by at least a qualified privilege"); see also Firth, 785 N.Y.S.2d at 756-57 (holding that a report by the Office of the New York State Inspector General was protected by an absolute privilege); Aquilone v. City of New York, 690 N.Y.S.2d 558, 560 (App. Div. 1999) (absolute privilege applied to a report by the Deputy Commissioner of Investigation for the New York City School District).

In this case, the plaintiff does not dispute that either an absolute or qualified privilege applies, and the plaintiff does not contend that any qualified privilege has been overcome by a showing of malice.  Rather, the plaintiff asserts that the defendants waived the privileges by disclosing the Peters Letter to individuals other than the Mayor.  The plaintiff does not cite any authority to support this argument.  Indeed, courts

19

have routinely applied the absolute and qualified privileges in similar situations where the allegedly libelous reports were shared with the public.  See, e.g., Murphy, 874 N.Y.S.2d at 407 (holding that a DOI report -- which was shared with the media -- was covered by at least a qualified privilege); Firth, 785 N.Y.S.2d at 755 (holding that an author of a report was protected by absolute privilege even though the report was published on the internet).

Therefore, the plaintiff's defamation claim based on the Peters Letter is barred by an absolute or qualified privilege and is **dismissed with prejudice.**

**B.**

The defendants argue that the plaintiff's defamation claim regarding the "other version" of the Peters Letter should be dismissed because the plaintiff fails to define with specificity what statements were defamatory.  The plaintiff's entire description of the "other version" of the Peters Letter is that it made "more false allegations, misrepresentations and inconsistencies in fact and law" than the original letter.  (SAC ¶¶ 104-05.)  This level of generality is insufficient to establish a defamation claim.

"[I]n order to bring a cause of action for defamation, [the] plaintiff must 'particularize the words uttered, as well as . . . the time, manner and persons to whom the publications

20

were made.'" Rosenberg v. Home Box Office, Inc., No.
0601924/2005, 2006 N.Y. Misc. LEXIS 9418, at *18 (Sup. Ct. Jan.
30, 2006) (quoting Vardi v. Mutual Life Ins. Co. v. New York,
523 N.Y.S.2d 95, 97 (App. Div. 1988)); see also Giuffre v.
Maxwell, 165 F. Supp. 3d 147, 153 (S.D.N.Y. 2016) ("Failure to
state the particular person or persons to whom the allegedly
slanderous or libelous comments were made as well as the time
and manner in which the publications were made warrants
dismissal." (quotation marks omitted)); Allen v. St. Cabrini
Nursing Home, No. 00cv8558, 2001 WL 286788, at *5 (S.D.N.Y. Mar.
9, 2001) (same), aff'd sub nom. Allen v. St. Cabrini Nursing
Home Inc., 64 F. App'x 836 (2d Cir. 2003) (summary order).
Because the plaintiff has failed to plead any particular
defamatory statement of fact in the "different version" of the
Peters Letter, the plaintiff cannot establish his claim of
defamation.  The plaintiff's claim for defamation regarding this
letter is accordingly **dismissed without prejudice.**

21

## CONCLUSION

For the reasons explained above, the defendants' motion to dismiss is **granted in part and denied in part.**

- The defendants' motion to dismiss the First Amendment retaliation claim is **denied.**

- The plaintiff's deprivation of liberty interest claim is **dismissed with prejudice.**

- The plaintiff's defamation claim regarding the Peters Letter is **dismissed with prejudice.**

- The plaintiff's defamation claim regarding the "different version" of the Peter's Letter is **dismissed without prejudice.**

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. The Clerk of Court is directed to close docket number 20.

**SO ORDERED.**

**Dated:**  **New York, New York**
**January 18, 2019**

_____
John G. Koeltl
**United States District Judge**