**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**GREGORY KUCZINSKI,**

      **Plaintiff,**     **17-cv-7741 (JGK)**

  **- against -**      **MEMORANDUM OPINION AND**
                   **ORDER**

**CITY OF NEW YORK et al.,**

      **Defendants.**

---

**JOHN G. KOELTL, District Judge:**

    The plaintiff, Gregory Kuczinski, the former Deputy Commissioner of the Investigations Division of the New York City Department of Correction ("DOC"), brought this action against the City of New York and individual defendants employed by the City of New York Department of Investigations ("DOI") alleging retaliation for his protected speech under the First Amendment and the New York State Constitution, deprivation of a liberty interest without due process, and multiple claims for defamation. After the Court dismissed the deprivation of liberty interest claim and one of the defamation claims, the case proceeded on the remaining claims. The defendants now move for summary judgment on the remaining claims, for retaliation and defamation. For the following reasons, the defendants' motion for summary judgment is **granted.**

1

**I.**

The standard for granting summary judgment is well established. "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable

2

inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114–15 (2d Cir. 1998).

## II.

### A.

In March 2015, the plaintiff began working as the Assistant Commissioner of the Investigations Division of the New York City DOC. Def.'s 56.1 Stmt. ¶¶ 1-2.[1] In December 2015, the plaintiff became the Acting Deputy Commissioner of DOC's Investigations Division, and in April 2016 he was promoted to Deputy Commissioner of DOC's Investigations Division. Id. at ¶¶ 3-4. On

---

[1] The plaintiff did not file a responsive statement in compliance with Local Civil Rule 56.1 to the defendants' Rule 56.1 statement, and therefore the statements in the defendants' Rule 56.1 statement will be deemed admitted by the plaintiff for purposes of this motion, provided that the statements are supported by admissible evidence. See Taylor & Fulton Packing, LLC v. Marco Int'l Foods, LLC, No. 09-cv-2614, 2011 WL 6329194, at *3-4 (E.D.N.Y. Dec. 16, 2011) (collecting cases).

April 7, 2016, DOI received an anonymous tip that Joseph Ponte, the DOC Commissioner, along with other high-level staff in the DOC, had been using City vehicles for personal use, after which DOI began to investigate. Id. at ¶ 5.

On January 23, 2017, the plaintiff assumed responsibility for DOC's Correction Intelligence Bureau, and in February 2017, the plaintiff assumed responsibility of DOC's Intelligence and Analytics Division. Id. at ¶¶ 6-7. On March 8, 2017, DOI informed the plaintiff of a pending investigation concerning the improper use by DOC officials of City-issued vehicles for personal use. Id. at ¶ 8. On March 13, 2017, DOI Investigators questioned the plaintiff about his use of his DOC-issued vehicle. Id. at ¶ 9.

On March 17, 2017, the plaintiff was questioned by defendants Jennifer Sculco, the Inspector General of DOI, Paul Cronin, Assistant Commissioner of DOI, and Michael Carroll, Deputy Commissioner of DOI, about possible violations of Mayoral Executive Order No. 16, specifically about allegations that members of DOC staff under the plaintiff's supervision had improperly investigated a DOI informant, a DOC inmate, and improperly monitored telephone calls between the informant and a DOI investigator, Ferdinand Torres. Id. at ¶ 10. The plaintiff alleges that during the March 17, 2017 interview, the defendants

Sculco, Cronin, and Carroll "verbally attacked" the plaintiff and had "already made their minds up." Id. at ¶ 11.

The plaintiff alleges that during the week of either March 20, 2017 or March 27, 2017, he met with members of the Bronx District Attorney's Public Integrity Unit ("Bronx PIU") and spoke with that unit about a number of topics, including that DOI investigators had allegedly raided a trailer at DOC; his interview with DOI investigators on March 13, 2017; his interview with defendants Sculco, Cronin, and Carroll on March 17, 2017; his belief that DOC staff listened to telephone calls between an inmate and a DOI investigator; his belief that certain DOI investigations were a waste of time and money; his belief that DOI was targeting him; and his belief that DOI's actions were personal. Id. at ¶ 13.

The plaintiff does not know whether the defendants Sculco, Cronin, Carroll, and Peters knew about the plaintiff's meeting with the Bronx PIU that took place during either the week of March 20, 2017 or the week of March 27, 2017 and the plaintiff does not know whether the defendants Sculco, Cronin, Carroll, and Peters knew  what the plaintiff said to the Bronx PIU at that meeting. Id. at ¶¶ 14, 16, 18, 20. The defendants Sculco, Cronin, Carroll, and Peters all deny having any knowledge that the plaintiff spoke with the Bronx PIU and all deny having any knowledge about what might have been discussed at the

plaintiff's meeting with the Bronx PIU. Id. at ¶¶ 15, 17, 19, 21.

In April 2017, DOI issued a report titled "Systemic Misuse of City Owned Vehicles by Senior Staff Members of the New York City Department of Correction." Id. at ¶ 22. The report stated, among other things that "[a] review of DC Kuczinski's vehicle usage revealed widespread misuse of his take-home vehicle privileges." Id. at ¶ 24.

On May 5, 2017, the defendant Mark Peters wrote a letter to Mayor Bill de Blasio (the "Peters Letter") in which Peters set out findings about violations of the Mayor's Executive Order 16 by members of DOC. Id. at ¶ 25. Among other things, the Peters Letter stated that "DOI has determined that members of DOC staff in the AIU [Applicant Investigation Unit], on multiple dates between January 2017 and March 2017, inappropriately monitored telephone calls between a DOI investigator and a DOC inmate that was cooperating with a DOI investigation." Id. The Peters Letter discussed the plaintiff's knowledge of the phone calls, the instructions the plaintiff gave to his staff to review some of the calls, and the plaintiff's failure to notify DOI of the intercepted phone calls. Id. at ¶ 26. The Peters Letter recommended that the plaintiff be terminated because, among other things, "[h]is failure to demonstrate sound judgment in this matter raises concerns about his ability to oversee the

Investigations and Intelligence Divisions, two crucial units to DOC operations." Id. at ¶ 27.

On May 8, 2017, the plaintiff was removed from his duties as Deputy Commissioner of DOC's Investigations Division by DOC Commissioner Ponte, who is not a defendant in this action, and on May 12, 2017, the plaintiff was terminated from DOC altogether. Id. at ¶¶ 28-29.

**B.**

On September 14, 2017, the plaintiff filed a complaint against the defendants in the New York State Supreme Court, New York County. ECF No. 1-1. On October 10, 2017, the defendants removed the case to this Court. ECF No. 1.

The plaintiff's Second Amended Complaint brought claims against the defendants for retaliation in violation of the First Amendment and Article I, § 8 of the New York State Constitution on the ground that the plaintiff's conversation with the Bronx PIU during the week of either March 20, 2017 or March 27, 2017 was protected speech; for deprivation of a liberty interest without due process on the ground that the defendants harmed the plaintiff's reputation by distributing false allegations to news outlets; and defamation based on the Peters Letter that was sent to the Mayor on May 5, 2017, and based on an alleged "different version" of the Peters Letter. See ECF No. 16; Kuczinski v. City of New York, 352 F. Supp. 3d 314 (S.D.N.Y. 2019).

7

The defendants moved to dismiss the SAC. The Court denied the motion to dismiss the First Amendment retaliation claim, granted the motion to dismiss the deprivation of liberty interest claim with prejudice, granted the motion to dismiss the defamation claim based on the Peters Letter with prejudice, and granted the motion to dismiss the defamation claim based on the "different version" of the Peters Letter without prejudice. See Kuczinski, 352 F. Supp. 3d at 326.

The plaintiff then filed a third amended complaint ("TAC") which brought a number of claims, some of which were included in the SAC and had been dismissed by the Court. The claims in the TAC that are properly before the Court on this motion for summary judgment and that were not previously dismissed are the plaintiff's claim for retaliation against protected speech under the First Amendment and the New York State Constitution and for defamation based on the April 2017 DOI Report titled "Systemic Misuse of City-Owned Vehicles by Senior Members of the New York City Department of Correction." ECF No. 34.

The defendants move for summary judgment against those two claims.

### III.

As an initial matter it is necessary to address the plaintiff's motion, filed in response to the defendants' motion for summary judgment, which the plaintiff labeled a "Motion to

8

Continue Defamation Causes of Action." ECF No. 59. The motion requests that the Court "[a]llow the First and Fifth Causes of action for defamation in the Third Amended Complaint be submitted to the Trier of Fact for [Decision]." ECF No. 59-1.

The first cause of action in the TAC alleged, in substance, that the plaintiff "was terminated from his employment with DOC because of his speech." TAC ¶ 123. Specifically, the plaintiff alleged that the "report of May 5, 2017 is and was categorically false as it pertains to Plaintiff GREGORY KUCZINSKI" and was "prepared with malicious intent to harm Plaintiff GREGORY KUCZINSKI." Id. at ¶¶ 124, 126. The fifth cause of action in the TAC alleged that "[a]s a result of the factual allegations herein and the publicity of same Plaintiff GREGORY KUCZINSKI has been libeled and defamed per se" and that "[e]ach statement published cast Plaintiff in a negative light and is actionable as such." Id. at ¶¶ 147-48.

The Federal Rules of Civil Procedure do not contemplate a motion described as a "motion to continue," either as a motion filed, as in this case, in response to a motion for summary judgment, or in general. The plaintiff's motion is not a proper motion under the Federal Rules of Civil Procedure, which requires that a motion "state with particularly the grounds for seeking the order." Fed. R. Civ. P. 7(b)(1)(B). The plaintiff has not stated the grounds for a "motion to continue" with

particularity. See, e.g., Dinsio v. Appellate Div., Third
Dep't., No. 16-cv-324, 2017 WL 3016832, at *10 (N.D.N.Y. July
14, 2017).

In any event, the substance of the "motion to continue," to
the extent that it can be discerned, has no merit. The first
cause of action in the TAC, which refers to a "report of May 5,
2017" could only refer to the Peters Letter, which is the only
publication in this case that occurred on May 5, 2017. However,
the Court previously dismissed the defamation claim with respect
to the Peters Letter with prejudice because it was subject to a
qualified or absolute privilege. See Kuczinski, 352 F. Supp. 3d
at 326. The plaintiff may not continue to pursue a claim that
has been dismissed from the case with prejudice.

The fifth cause of action in the TAC is devoid of any
specificity and merely alleges, in substance, that "[a]s a
result of the factual allegations herein and the publicity of
same Plaintiff GREGORY KUCZINSKI has been libeled and defamed
per se" and that "[e]ach statement published cast Plaintiff in a
negative light and is actionable as such." To the extent that
the fifth cause of action alleges a claim for defamation that
properly remains in the case, namely a claim for defamation
based on the April 2017 DOI Report, the Court discusses that
claim below. The motion to continue is otherwise **denied**.

**IV.**

**A.**

The plaintiff first brings a claim against the individual defendants under 42 U.S.C. § 1983 for retaliation against the plaintiff's protected speech in violation of the First Amendment and Article I, § 8 of the New York State Constitution.[2]

In order to succeed on a First Amendment retaliation claim, a public employee must establish that "(1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." Matthews v. City of New York, 779 F.3d 167, 172 (2d Cir. 2015).

On this motion, the parties do not dispute that the plaintiff's speech to the Bronx PIU was protected by the First Amendment and that the plaintiff suffered an adverse action when he was removed from his post at the DOC and then terminated altogether. The defendants dispute only the existence of a causal connection between the adverse action and the protected speech.[3]

---

[2] The standards for a retaliation claim under the First Amendment and Article I, § 8 of the New York State Constitution are identical. See Kuczinski, 352 F. Supp. 3d at 321.

[3] In the Court's previous opinion, the Court noted that the plaintiff did not appear to allege that the defendants knew that the plaintiff had spoken to the Bronx PIU, but the Court noted that the defendants did not assert

11

"To establish causation, a plaintiff must show that the protected speech was a substantial motivating factor in the adverse employment action." Fotopolous v. Bd. of Fire Comm'rs of Hicksville Fire Dist., 11 F. Supp. 3d 348, 367 (E.D.N.Y. 2014) (quoting Cioffi v. Averill Park Central Sch. Dist. Bd. of Educ., 444 F.3d 158, 167 (2d Cir. 2006)). "A causal relationship can be demonstrated either indirectly by means of circumstantial evidence, including that the protected speech was followed by adverse treatment, or by direct evidence of animus." Id. at 367–68 (quoting Wrobel v. Cty. of Erie, 692 F.3d 22, 32 (2d Cir. 2012)).

To survive a defendant's motion for summary judgment, a plaintiff cannot rely "solely on his own speculation" that there was a causal connection between the adverse action and the alleged protected speech. See Whitfield v. Imperatrice, 477 F. App'x 806, 809 (2d Cir. 2012). Rather, the plaintiff must offer some "tangible proof demonstrating [his] protected speech animated" the adverse action; he cannot rely on "conclusory assertions of retaliatory motive." Washington v. Cty. of Rockland, 373 F.3d 310, 321 (2d Cir. 2004) (Sotomayor, J.) (internal citations omitted). Where there is no evidence that the defendants "were even aware" of the plaintiff's alleged

---

causation as a basis to dismiss the SAC. See Kuczinski, 352 F. Supp. 3d at 323 n.5. The question is now squarely raised on this motion.

protected speech apart from the plaintiff's "own reports" and
"speculation," let alone that the adverse actions "arose out of"
the alleged protected speech or "were primarily motivated" by
the alleged protected speech, a plaintiff has not presented
sufficient evidence to defeat a motion for summary judgment.
Vinci v. Quagliani, 889 F. Supp. 2d 348, 360 (D. Conn. 2012);
see Wrobel, 692 F.3d at 32 ("[I]t is only intuitive that for
protected conduct to be a substantial or motivating factor in a
decision, the decisionmakers must be aware of the protected
conduct.") (quoting Ambrose v. Twp. of Robinson, 303 F.3d 488,
493 (3d Cir. 2002)); Skates v. Inc. Vill. of Freeport, 265 F.
Supp. 3d 222, 237-38 (E.D.N.Y. 2017) (granting a defendant's
motion for summary judgment on a First Amendment retaliation
claim where "Plaintiff fails to identify evidence that anyone
who allegedly took adverse employment actions against her had
knowledge of her protected activity . . . .").

The plaintiff has failed to offer any "tangible proof" that
the individual defendants Sculco, Cronin, Carroll, and Peters
were aware of the only instance of alleged protected speech at
issue in this case that is properly before the Court, namely the
plaintiff's conversation with members of Bronx PIU during the
week of either March 20, 2017 or March 27, 2017.[4]

---

[4] At various points in connection with the motion for summary judgment, the
plaintiff appears to reformulate his First Amendment retaliation claim as one
based not on the conversation with the Bronx PIU but based on the plaintiff's

13

At the plaintiff's deposition, he stated, in substance, that he did not know whether Sculco, Cronin, Carroll, and Peters were aware that the plaintiff had met with the Bronx PIU. Marks Decl. Ex. A, at 128-33. Any statement that the plaintiff made during his deposition that could suggest knowledge on the part of the defendants about the plaintiff's meeting with the Bronx PIU was unsubstantiated speculation, for example when the plaintiff stated "why wouldn't [the defendants] assume I would pursue any avenue that was out there." Id. at 132. The plaintiff has failed to provide any "tangible proof" that the defendants were aware of the plaintiff's alleged protected speech made during his conversation with the Bronx PIU.

In addition to the plaintiff's failure to carry his burden to demonstrate that the defendants were aware at the time they took the alleged adverse action against the plaintiff that the plaintiff had engaged in the alleged protected speech at issue in this case, the defendants' evidence demonstrates that the defendants were unaware of the plaintiff's conversation with the

---

rejection of DOI's request for the release and assignment to DOI of additional staff members in September or October 2016. See Kuczinski, 352 F. Supp. 3d at 322. The plaintiff raised this allegation in the SAC, but did not continue to assert this allegation as a basis for relief during briefing on the motion to dismiss. See id. In any event, this claim for retaliation under the First Amendment would fail as a matter of law because the plaintiff was not speaking as a public citizen, but rather was acting pursuant to his "official duties" as a City employee and as Deputy Commissioner for Investigations, when he rejected DOI's request that the plaintiff provide DOI with additional manpower. See Garcetti v. Ceballos, 547 U.S. 410, 421-22 (2006).

Bronx PIU. At their depositions, the four individual defendants unequivocally denied having any knowledge that the plaintiff spoke with any member of the Bronx PIU about any of the allegations in the third amended complaint in this action when the plaintiff was removed from his post and then terminated from DOC in May 2017. See id., Ex. D, at 167 (Sculco); id., Ex. E, at 123 (Cronin); id., Ex. F, at 139-40 (Carroll); id., Ex. G, at 147-48 (Peters).[5]

There is no evidence, either direct or circumstantial, that the individual defendants in this case were aware of the plaintiff's alleged protected speech. In fact, the evidence offered by the defendants demonstrates that the defendants had no knowledge that the plaintiff had spoken with the Bronx PIU when the plaintiff was removed from his post and then terminated in May 2017.

The existence of a causal connection between the plaintiff's termination and his conversation with the Bronx PIU is further undermined by the undisputed timeline of events in this case.

The DOI investigation of the conduct by the plaintiff and others at the DOC for allegedly misusing City-owned vehicles

---

[5] These facts, which are supported by the summary judgment record, are admitted as true in light of the plaintiff's failure to submit a responsive Rule 56.1 statement in this case. See Taylor & Fulton, 2011 WL 6329194, at *3-4.

began well before the plaintiff's conversation with the Bronx
PIU. The plaintiff became aware of that investigation on March
8, 2017 when DOI informed the plaintiff of the ongoing
investigation and on March 13, 2017 when the plaintiff was
questioned by DOI. These dates predated the plaintiff's
conversation with the Bronx PIU, which occurred the week of
March 20, 2017 at the earliest.

Similarly, the Peters Letter described allegations of
misconduct by the plaintiff and others that occurred between
January and March 2017 concerning the improper monitoring of
telephone conversations between a DOI investigator and a DOC
inmate. The individual defendants questioned the plaintiff about
these allegations during the March 17, 2017 interview with the
plaintiff, which also occurred prior to the plaintiff's
conversation with the Bronx PIU during the week of March 20,
2017 or the week of March 27, 2017. The timing of the DOI
investigations into the alleged misuse of City-owned vehicles
and into the alleged misconduct concerning the improper
monitoring of telephone conversations, which culminated in the
April 2017 DOI report and the Peters Letter, respectively,
undermines any inference of a causal connection between the
plaintiff's alleged protected speech and the plaintiff's
termination following the publication of the April, 2017 DOI
report and the Peters Letter. See Murray v. Town of N.

16

Hempstead, 853 F. Supp. 2d 247, 275 (E.D.N.Y. 2012) (finding
that the defendants' evidence "is more than sufficient to
establish a legitimate, non-retaliatory reason for any adverse
actions taken against the plaintiff. The facts here raise a
strong inference that [the plaintiff] was not terminated for
retaliatory reasons – an inference which [the plaintiff] has not
overcome by the production of contrary evidence."); see also
Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d
Cir. 2001) (finding that in a private Age Discrimination in
Employment Act case, where "gradual adverse job actions began
well before the plaintiff had ever engaged in any protected
activity, an inference of retaliation does not arise.").

Therefore, the individual defendants' motion for summary
judgment on the plaintiff's First Amendment retaliation claim is
granted because "[a] reasonable jury could not find a causal
connection between" the plaintiff's alleged protected speech and
the conduct alleged to be retaliatory. See Wrobel, 692 F.3d at
32.

## B.

The plaintiff also cannot hold the City of New York liable
for the plaintiff's alleged constitutional injury.

Under the Supreme Court's decision in Monell v. Department
of Social Services of City of New York, 436 U.S. 658 (1978), in
order to hold a municipality liable under 42 U.S.C. § 1983 for

deprivations of constitutional rights a plaintiff must show that

he suffered the denial of a constitutional right that was caused

by an official municipal policy or custom. See Outlaw v. City of

Hartford, 884 F.3d 351, 372-73 (2d Cir. 2018). "Absent such a

custom, policy, or usage, a municipality cannot be held liable

on a respondeat superior basis for the tort of its employee."

Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012).

      As an initial matter, because the plaintiff has not

established that he suffered a constitutional injury, his

attempt to hold the City of New York liable under Monell, which

is not a separate cause of action, but an extension of liability

to a municipality, fails. See Segal v. City of New York, 459

F.3d 207, 219 (2d Cir. 2006) ("Because the district court

properly found no underlying constitutional violation, its

decision not to address the municipal defendants' liability

under Monell was entirely correct."); Fotopolous, 11 F. Supp. 3d

at 373 (collecting cases).

      In any event, the plaintiff has failed to point to any

evidence that the alleged First Amendment injury he suffered was

the result of an "official policy" of the City of New York. See

Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). The

plaintiff has failed to point to any evidence that his alleged

retaliatory termination was the result of "(1) a formal policy

officially endorsed by the municipality; (2) actions taken by

18

government officials responsible for establishing the municipal policies that causes the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." Jones v. Bay Shore Union Free Sch. Dist., 170 F. Supp. 3d 420, 438 (E.D.N.Y.) (internal quotation marks omitted), aff'd, 666 F. App'x 92 (2d Cir. 2016). The plaintiff has failed to specify what the policy or custom that he alleges consisted of or how the actions taken by the individual defendants in this case, Cronin, Carroll, Sculco, and Peters, were caused by that policy. To the extent that the plaintiff alleges that the City of New York failed to train its employees such that the failure to train was the cause of the plaintiff's alleged constitutional injury, the plaintiff has pointed to no evidence of such a failure and has pointed to no evidence that such a failure amounted to deliberate indifference to the First Amendment rights of municipal employees like the plaintiff. See City of Canton v. Harris, 489 U.S. 378, 388 (1989). Nor can the plaintiff meet his burden to demonstrate that his constitutional injury was the result of any action

19

taken by any of the individual defendants in this case and that the individual defendants had final policymaking authority with respect to the particular conduct at issue in this case. See City of St. Louis v. Prapotnik, 485 U.S. 112, 127 (1985); Jones, 170 F. Supp. 3d at 438.

Because the plaintiff has offered no relevant evidence to support of his allegation that the City of New York is liable for his alleged constitutional injury under Monell, the motion for summary judgment brought by the City of New York is granted.

**V.**

The defendants also move for summary judgment against the plaintiff's claim that he was defamed by the publication of the April 2017 DOI Report.

For the same reasons that this Court previously dismissed the plaintiff's claim for defamation based on the Peters Letter because it was subject to a qualified or absolute privilege, the April 2017 DOI report is subject to an absolute or qualified privilege. See Kuczinski, 352 F. Supp. 3d at 325 ("DOI reports and reports issued by similar agencies have been held to be subject to an absolute or qualified privilege.") (collecting cases).

In the plaintiff's opposition to the defendants' motion for summary judgment as well as in the plaintiff's motion to continue, the plaintiff disavows a defamation claim based on the

20

April 2017 DOI Report, and asserts that his defamation claim rests on a May 8, 2017 DOI press release, which the plaintiff alleges is the so-called "different version" of the Peters Letter that formed the basis of the defamation claim that this Court previously dismissed without prejudice. This claim, which was not alleged in the TAC, is not properly part of the case at this time, absent an attempt by the plaintiff to amend the pleadings to conform to the evidence introduced on this motion for summary judgment pursuant to Federal Rule of Civil Procedure 15(b). See Myers v. Moore, 326 F.R.D. 50, 60-61 (S.D.N.Y. 2018) (discussing Rule 15(b) motions in the context of summary judgment). Such an amendment would be improper because the issue was not litigated with the express or implied consent of the parties and the defendants would be prejudiced because they did not litigate this case on the understanding that the DOI May 8, 2017 Press Release formed the basis for the plaintiff's defamation claim. Id. at 61-62.

In any event, the May 8, 2017 DOI Press release is virtually identical in its subject matter to the Peters Letter that this Court has previously held was subject to a qualified or absolute privilege. See Kuczinski, 352 F. Supp. 3d at 326. The May 8, 2017 press release, like the Peters Letter, described a DOI investigation that "revealed that members of Department of Correction ("DOC") staff, including Deputy Commissioner for the

21

Investigation Division and Correction Intelligence Bureau Gregory Kuczinski, engaged in unauthorized surveillance of DOI undercover operations." ECF No. 61-2. The press release then went on to outline the findings of the investigation and the press release expressly referred to the Peters Letter: "We have sent a letter describing those findings to Mayor de Blasio." Id. The press release noted that "[b]ecause the [Peters Letter] contains significant technical information about security operations, we will not be making the letter available at this time beyond the summary findings above. However, we note that the letter contains the following five recommendations, each of which the Mayor's office has now agreed to implement immediately." Id. The press release then listed the five recommendations, including that the plaintiff be terminated from his current position because "[h]is failure to demonstrate sound judgment in this matter raises concerns about his ability to oversee the Investigation and Intelligence Divisions, two crucial units to DOC operations." Id.

For substantially the same reasons that the defamation claim based on the Peters Letter was barred by an absolute or qualified privilege, the May 8, 2017 press release, which incorporated the Peters Letter by reference and made many of the same findings that the Peters Letter did, is protected by the same privilege. See Kuczinski, 352 F. Supp. 3d at 326. The fact

22

that the press release was publicly disseminated does not bar application of the privilege because "courts have routinely applied the absolute and qualified privileges in similar situations where the allegedly libelous reports were shared with the public." Id.

Therefore, the defendants' motion for summary judgment with respect to the plaintiff's claims for defamation is granted.

## CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not discussed specifically above, the arguments are either moot or without merit. The defendants' motion for summary judgment is **granted**. The Clerk is directed to enter judgment in favor of the defendants and against the plaintiff. The Clerk is also directed to close all pending motions and to close this case.

**SO ORDERED.**

Dated:     New York, New York
           July 16, 2020                    _____/s/ John G. Koeltl ____
                                                 John G. Koeltl
                                         United States District Judge